IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BETTY F.,

          Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

         Defendant.

CIVIL ACTION FILE

NO. 1:18-CV-1799-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her disability application. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on July 5, 2013, alleging that she became disabled on December 7, 2012. [Record ("R.") at 30, 363-73]. After Plaintiff's applications were denied initially and on reconsideration, an administrative hearing was held on

February 28, 2017.  [R. at 64-98, 229-30, 269-79].  The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications on June 6, 2017, and the Appeals Council denied Plaintiff's request for review on February 26, 2018.  [R. at 1-7, 30-41].  Plaintiff filed her complaint in this court on April 27, 2018, seeking judicial review of the Commissioner's final decision.  [Doc. 3].  The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Facts

The ALJ found that Plaintiff has degenerative disc disease and mood disorder. [R. at 33].  Although these impairments are "severe" within the meaning of the Social Security regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. at 34].  The ALJ found that Plaintiff is capable of performing her past relevant work as a deli clerk, sexton, and dining room cashier.  [R. at 39].  The ALJ also found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform.  [R. at 40].  As a result, the ALJ concluded that Plaintiff has not been under a disability from December 7, 2012, the alleged onset date, through the date of the ALJ's decision.  [R. at 41].

AO 72A

(Rev.8/82)

The decision of the ALJ [R. at 30-41] states the relevant facts of this case as modified herein as follows:

The claimant testified at the administrative hearing that she is 51 years old, has a tenth grade education, is five feet seven and a half inches tall, and weighs 245 pounds. She does not have any source of income and receives food stamp assistance. The claimant injured her knee in 2002 and reinjured it in 2006. She has a torn rotator cuff of the left shoulder. In addition, she has bipolar disorder and hears voices. She sometimes needs help to bathe and dress, but she often stays in bed. She testified that she stopped using marijuana in June 2012.

The claimant alleges that she cannot work because of scoliosis, bipolar disorder, knee pain, and depression. (Exhibit 2E at 2). She alleged the following on appeal: "I cannot walk in the morning or stand for at least five minutes. I cannot walk for three minutes without having to stop or without a cane. I'm hearing voices that are telling me to hurt myself." (Exhibit 7E at 1). In her initial application and on appeal, the claimant denied any mental health treatment. (Exhibit 2E at 5; Exhibit 7E at 2).

The claimant alleges a history that includes a fractured right ankle in 1999, right knee surgeries in 2008 and 2010, and left shoulder rotator cuff surgery in 2011. (Exhibit 3F at 2, 3; Exhibit 5F at 4). She reports that she has used a cane since

3

fracturing her ankle because "it never healed properly." (Exhibit 5F at 4, 5). Her allegation that she has used a cane since 1999 is incongruent with her subsequent work history, which included maintenance and construction. (Exhibit 5F at 4). The claimant alleges that she was diagnosed with scoliosis in November 2012. (Exhibit 3F at 2). Magnetic resonance imagining ("MRI") studies of the lumbar spine in April 2013 show early degenerative disc disease with mild levoscoliosis and no evidence of disc bulging or herniation. (Exhibit 5E at 9).

The claimant had two consultative psychological examinations. Consultative examiner Valerie McAdams, Psy. D., assessed the claimant in December 2013 with mood disorder not otherwise specified, opioid abuse, and rule-out opioid dependence. (Exhibit 2F at 5, 6). The claimant denied being in treatment and denied taking any psychotropic medication. The claimant told Dr. McAdams that she had been assessed with "manic depression" around 1996 and that she had experienced an overdose of pills and alcohol in 2011. The claimant alleged that she has been clean for five months from alcohol abuse, prescription drug abuse, and heroin abuse, but she denied participating in any substance abuse program since 2011. (Exhibit 2F at 4). The claimant told Dr. McAdams that she is capable of living independently, including bathing, dressing, and cleaning her house. (Exhibit 2F at 3, 4).

4

Dr. McAdams noted that the claimant had no problems understanding and responding during the evaluation. (Exhibit 2F at 5). In interacting with others, the claimant has mild limitations. She is married and attends substance abuse meetings without any apparent difficulties. (Exhibit 2F at 4; Exhibit 5F at 5). With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations.

Joan Kent, Ph.D., a consultative examiner, assessed the claimant in November 2014 with bipolar disorder, reading disorder, and borderline intellectual range provisionally. (Exhibit 5F at 7). Noting the claimant's self-reported history of job injuries, Dr. Kent speculated that getting injured on the job might be the claimant's way out of working in positions that were too challenging or stressful to her. (Exhibit 5F at 7). Dr. Kent reported that the claimant walked with a limp and carried, as opposed to used, a cane. (Exhibit 5F at 6). The claimant alleged a history of three suicide attempts with the most recent in 2009, denied substance abuse since 2013, and denied receiving treatment or taking psychotropic medication. (Exhibit 5F at 5, 7). Dr. Kent opined that the claimant had moderate impairment in attention, concentration, energy, and pace. (Exhibit 5F).

Consultative examiner Debbie Brewer, M.D., assessed the claimant with mild S-shaped scoliosis of the thoracic and lumbar spine, no more than five to ten degrees.

5

(Exhibit 3F at 5). Dr. Brewer diagnosed the claimant with only mild multi-level thoracic spine degenerative disc disease and multi-level bulging of the cervical spine at C3-C4, C4-C5, C5-C6, and C6-C7. (Exhibit 3F at 11). The claimant also has moderate left ankle degenerative joint disease. (Exhibit 3F at 5, 12). The claimant told Dr. Brewer that she has a history of right knee arthroscopic surgery and left shoulder rotator cuff tear status post-surgical repair in 2011. Dr. Brewer noted that the claimant had an antalgic gait and used a cane. Examination showed slightly decreased strength; overall muscle strength was +4-5/5, with lower left extremity at +4/5; and grip strength left was +4/5 and right was +4-5/5. The claimant denied having a treating physician and reported that she took only B.C. Powder and Tylenol for relief. (Exhibit 3F at 3).

The claimant reported incongruently throughout the record concerning her daily abilities. For example, in her function report, she denied driving, but she told Dr. Brewer that she drove. In her function report, the claimant denied cooking, but she told Dr. Kent that she cooked. (Exhibit 8E at 5; Exhibit 3F at 3; Exhibit 5F at 5). Although in her initial application the claimant reported special education from 1979 to 1983, she told Dr. Kent that she attended special education from first grade through the eleventh grade. (Exhibit 2E at 3; Exhibit 5F at 4).

6

In sum, the claimant was ages 47 to 51 during the relevant period, has an eleventh grade education, and has a history of working in maintenance and construction. (Exhibit 5F at 4). She received worker's compensation twice prior to the relevant period but has reported inconsistently concerning the periods covered by these claims, from 1999 to 2001 and from 2006 to 2011. (Exhibit 2F at 3; Exhibit 3F at 2; Exhibit 5F at 4).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.  Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering

7

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [s]he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving her disability.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  At step

8

one, the claimant must prove that she is not engaged in substantial gainful activity. <u>See</u> <u>id.</u> The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments. <u>See</u> <u>id.</u> At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>See</u> <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience. <u>See</u> <u>id.</u> "If the claimant cannot prove the existence of a listed impairment, [s]he must prove at step four that [her] impairment prevents [her] from performing [her] past relevant work." <u>Doughty</u>, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides [her] past relevant work." <u>Id.</u> If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. <u>See</u> 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.  Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant engaged in substantial gainful activity during the following period: January 1, 2013, through December 31, 2013. (20 C.F.R. §§ 404.1520(b), 404.1571, *et seq.*, 416.920(b), and 416.971, *et seq.*).

3. However, there has been a continuous twelve-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) that the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: degenerative disc disease and mood disorder. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

6. The claimant has the residual functional capacity to perform less than the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with the following limitations: occasional climbing of ropes, ladders, scaffolds, ramps, and stairs; occasional balancing; frequent stooping; occasional kneeling and crouching; and frequent crawling. The claimant is limited to simple routine tasks involving no more than simple instructions and simple work related decisions with few work place changes.

7. The claimant is able to perform her past relevant work as a deli clerk, sexton, and dining room cashier. (20 C.F.R. §§ 404.1565 and 416.965).

8. The claimant was born on September 13, 1965, and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (20 C.F.R. §§ 404.1563 and 416.963).

AO 72A

(Rev.8/82)

9.   The claimant has a limited education and is able to communicate in English. (20 C.F.R. §§ 404.1564 and 416.964).

10.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See Social Security Ruling ("SSR") 82-41and 20 C.F.R. Part 404, Subpart P, Appendix 2).

11.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12.  The claimant has not been under a disability, as defined in the Social Security Act, from December 7, 2012, through the date of the ALJ's decision. (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

[R. at 33-41].

## V.   Discussion

Plaintiff argues that the ALJ's decision denying her disability applications should be reversed. [Doc. 11]. According to Plaintiff, the ALJ erred by failing to state what weight she gave to the opinions of consultative examining psychologists Dr. Valerie McAdams and Dr. Joan Kent. [Id. at 11-18]. Plaintiff also contends that the ALJ failed to provide Plaintiff with a full and fair hearing. [Id. at 18-23].

A court must "give substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1212 (11th Cir. 2005). However, this "does not permit a

11

court to uphold the [Commissioner's] decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). When making an assessment of the claimant's residual functional capacity ("RFC"), the ALJ is required to consider and address the opinions of all medical sources, including state agency consultants and non-treating psychologists and physicians. See SSR 96-6p; SSR 96-8p. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p. "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." Himes v. Comm'r of Social Security, 585 Fed. Appx. 758, 762 (11th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)); accord Lee v. Colvin, 2015 WL 5307513, at *3 (M.D. Fla. September 10, 2015) ("The Regulations establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion . . . ."). "The opinions of examining physicians are generally given more weight than non-examining physicians; treating physicians receive more weight than non-treating physicians; and specialists on issues within their

12

areas of expertise receive more weight than non-specialists." <u>Schuhardt v. Astrue</u>, 303 Fed. Appx. 757, 759 (11th Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).

In the present case, Plaintiff argues that the ALJ did not adequately evaluate the medical opinions of consultative examining psychologists Dr. Valerie McAdams and Dr. Joan Kent. [Doc. 11 at 11-18]. Dr. McAdams conducted a psychological evaluation of Plaintiff on December 2, 2013. [R. at 573-77]. According to Dr. McAdams, Plaintiff reported that she received special education for both learning and behavioral difficulties, that she once stayed up for eleven days with no sleep "due to thinking," that she dislikes being around crowds and has a lack of patience when dealing with others, and that she goes to substance abuse meetings during the day but has no friends because she does not like people. [R. at 574-75]. Dr. McAdams noted that Plaintiff reported a history of depression along with a suicidal attempt two years prior. [R. at 576]. The psychologist also found that Plaintiff was able to adequately express herself, that she maintained attention and focus throughout the evaluation, and that she did not appear to have problems with memory functioning. [Id.].

Dr. McAdams opined that Plaintiff's insight appears adequate and her judgment appears "poor as indicated by chronic drug usage." [Id.]. Dr. McAdams estimated that Plaintiff's intelligence was within the borderline range, that she is capable of

AO 72A
(Rev.8/82)

understanding and following simple and moderately-detailed instructions, and that she has adequate sustained attention for short tasks. [R. at 576-77]. However, the psychologist found that Plaintiff "may have difficulty . . . enduring persistence and pace over longer periods of time." [R. at 577]. Dr. McAdams also opined that Plaintiff "may have mild problems managing work-related stressors . . . , but is not expected to have significant problems interpersonally in the work setting." [Id.].

Dr. Joan Kent conducted a mental status evaluation of Plaintiff on November 6, 2014. [R. at 599-603]. According to Dr. Kent's evaluation, Plaintiff reported that she had been sexually molested and raped when she was a child. [R. at 599]. Plaintiff attended special education classes from grades one through eleven and attempted, but did not pass, the General Education Development ("GED") tests several times. [Id.]. Plaintiff reported that she used cocaine powder, crack, and heroin from the time she was a teenager until 2012, but that she had been clean for the fifteen months prior to seeing Dr. Kent. [R. at 600]. Plaintiff also stated that she attends Narcotics Anonymous meetings five days a week. [Id.]. Plaintiff reported that she had been diagnosed with bipolar disorder and that she had attempted suicide via overdose on three occasions. [Id.]. In addition, Plaintiff reported paranoid ideation of harm and hearing a male voice telling her that her wife is cheating on her. [R. at 600-01].

14

Dr. Kent found that Plaintiff's mood was depressed with negative self talk, nightmares, guilt, fear of dying, impatience, poor stress tolerance, and argumentativeness. [R. at 601]. The psychologist noted that Plaintiff has a history of getting injured on the job and that this "may be her way out of working in positions that are too challenging or stressful to her." [R. at 602]. Dr. Kent diagnosed bipolar, depressed type; reading disorder; and borderline intellectual range provisionally. [Id.]. Dr. Kent opined that Plaintiff was moderately impaired in concentration and pace, that her depression may interfere with recall, and that her limited intellectual range further impairs her work prospects. [R. at 601-02]. The psychologist also found that Plaintiff has a severe impairment with social interaction, a severe impairment with regard to functioning in a work setting, and a moderate impairment with concentration and directions. [R. at 602-03].

As previously noted, Plaintiff argues that the ALJ did not adequately evaluate the medical opinions of Dr. McAdams and Dr. Kent. [Doc. 11 at 11-18]. The Eleventh Circuit has held that an ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Social Security, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d

15

278, 279 (11th Cir. 1987) (per curiam)); accord 20 C.F.R. §§ 404.1527, 416.927.[1] "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). In the present case, the ALJ discussed the evaluations and some of the findings from Dr. McAdams and Dr. Kent, but the ALJ failed to state how much weight she gave to the examining psychologists' opinions. The ALJ may have considered and implicitly rejected these opinions, but the court is unable to determine if the ALJ's rejection was supported by substantial evidence and based upon proper legal standards because the ALJ did not offer any supporting reasons. See Cowart, 662 F.2d at 735.

The Commissioner acknowledges that the ALJ did not explicitly state the weight given to the psychologists' opinions. [Doc. 12 at 9-12]. However, the Commissioner argues that the ALJ's error was harmless. [Id.]. According to the Commissioner, the ALJ's RFC findings were consistent with Dr. McAdams' findings and opinions. The Commissioner also contends that the ALJ's decision reveals that she implicitly rejected Dr. Kent's opinions regarding Plaintiff's mental limitations. [Id.].

---

[1]"Administrative law judges . . . are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p.

16

With respect to Dr. McAdams, the court agrees that the ALJ's RFC assessment was consistent with the psychologist's opinions. "[A]n ALJ's hypothetical [and RFC] restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies." Jarrett v. Comm'r of Social Security, 422 Fed. Appx. 869, 872 (11th Cir. 2011) (citing Winschel, 631 F.3d at 1181 ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.")). In the present case, Dr. McAdams found that Plaintiff "may have difficulty . . . enduring persistence and pace over longer periods of time." [R. at 577]. The ALJ's decision reveals that she adopted Dr. McAdams' opinion as the ALJ found that Plaintiff has moderate limitations in concentrating, persisting, or maintaining pace. [R. at 35]. The ALJ then concluded that Plaintiff's RFC limited her to simple routine tasks involving no more than simple instructions and simple work related decisions with few work place changes. [Id.]. This finding was consistent with Dr. McAdams' opinion that Plaintiff "is capable of understanding and following simple and

17

moderately-detailed instructions." [R. at 577]. Although the ALJ should have explicitly stated the amount of weight given to Dr. McAdams' opinion, the court finds that this error was harmless. The ALJ's decision to include in the RFC a limitation to simple routine tasks sufficiently accounted for Dr. McAdams' findings regarding Plaintiff's restrictions in the areas of persistence and pace. See Jarrett, 422 Fed. Appx. at 872; Hopson v. Astrue, 2012 WL 1155294, at *7 (M.D. Fla. April 5, 2012) ("By including in the hypothetical a limitation of 'simple, routine repetitive tasks,' the ALJ adequately accounted for restrictions related to concentration, persistence, and pace since the medical evidence demonstrated Plaintiff's ability to perform the tasks.").

While the ALJ's failure to state the weight given to Dr. McAdams' opinion amounted to harmless error, the court finds that the ALJ's silence with regard to the weight assigned to Dr. Kent's opinions was a significant error. Dr. Kent opined, *inter alia*, that Plaintiff has a severe impairment with social interaction, a severe impairment with regard to functioning in a work setting, and a moderate impairment with concentration and directions. [R. at 602-03]. Dr. Kent also found that Plaintiff's depression may interfere with recall and that her limited intellectual range further impairs her work prospects. [R. at 601-02]. For the reasons discussed *supra*, the

18

undersigned concludes that the psychologist's finding that Plaintiff is moderately impaired in areas of concentration and directions was consistent with the ALJ's RFC.

With respect to the other opinions offered by Dr. Kent, the Commissioner acknowledges that the ALJ did not include these limitations in the RFC. The Commissioner, however, contends that the ALJ did not commit reversible error because she indicated in her decision that she implicitly rejected Dr. Kent's opinions. The Commissioner notes that the ALJ found Plaintiff's report to Dr. Kent concerning her history of three suicide attempts "is incongruent with her report to Dr. McAdams of only one suicide attempt." [R. at 37]. The ALJ also wrote that Plaintiff reported in her initial application that she had been in special education from 1979 to 1983, but Plaintiff "told Dr. Kent that she attended special education from first grade through the eleventh grade." [Id.]. The Commissioner argues that the ALJ adequately explained her reasons for implicitly rejecting Dr. Kent's opinion. For a number of reasons, the court disagrees.

Dr. Kent found that Plaintiff's depression may interfere with recall, that her limited intellectual range further impairs her work prospects, that she has a severe impairment with social interaction, and that she a severe impairment with regard to functioning in a work setting. [R. at 601-03]. The ALJ did not include these findings

19

in the RFC assessment. The ALJ also did not, as required by the Eleventh Circuit, "state with particularity the weight given to [Dr. Kent's] medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179. The Commissioner has failed to show that the ALJ's error on this issue was harmless.

The ALJ wrote that Plaintiff's report to Dr. Kent of three suicide attempts was "incongruent with her report to Dr. McAdams of only one suicide attempt." [R. at 37]. However, the portion of Dr. McAdams' evaluation cited by the ALJ simply notes that Plaintiff reported "a suicidal attempt a couple years ago," not that Plaintiff reported that she had only attempted suicide once in her life. [R. at 576]. With regard to Plaintiff's discrepancy about the length of time that she was in special education, the court notes that the ALJ did not state that she was rejecting any portion of Dr. Kent's opinions on the basis of this inconsistency or for any other reason. This omission by the ALJ makes it impossible for the court to determine whether the ALJ had legitimate reasons supported by the record for rejecting Dr. Kent's opinions. It may have been that when the ALJ assessed the RFC, she simply forgot about the limitations as opined by Dr. Kent. Moreover, the alleged inconsistency about the number of years that Plaintiff was in special education was relatively minor. [R. at 37, 599]. There is no dispute that Plaintiff was in special education and that both Dr. McAdams and Dr.

20

Kent estimated that Plaintiff's intelligence was in the borderline range. [R. at 573-77, 599-603].

In summary, the undersigned finds that the ALJ committed reversible error. The ALJ failed to state how much weight she gave to Dr. Kent's opinions, and she did not explain why the limitations found by the psychologist were not included in the RFC. See Winschel, 631 F.3d at 1179; Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990) (recognizing that the ALJ must state the weight accorded to each item of evidence and the reasons therefore); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986) (same); SSR 96-8p. Ruling 96-8p provides, "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. Dr. Kent opined that Plaintiff's depression may interfere with recall, that her limited intellectual range further impairs her work prospects, that she has a severe impairment with social interaction, and that she has a severe impairment with regard to functioning in a work setting. [R. at 601-03]. The ALJ, however, found that Plaintiff's RFC only limited her to simple routine tasks involving no more than simple instructions and simple work related decisions with few work place changes. [R. at 35]. Although the ALJ's RFC assessment conflicted with

21

the opinion of Dr. Kent, the ALJ offered no explanation why the examining psychologist's opinions were not adopted. [R. at 35-38].

The court must evaluate the ALJ's decision based on the reasoning provided by the ALJ in her written decision. As the Eleventh Circuit wrote in <u>Owens v. Heckler</u>, 748 F.2d 1511, 1516 (11th Cir. 1984), "We decline . . . to affirm simply because some rationale might have supported the ALJ's conclusion. Such an approach would not advance the ends of reasoned decision making." The ALJ may have had legitimate reasons supported by the record for not including in the RFC the limitations found by Dr. Kent. But without an explanation from the ALJ, the court is unable to determine whether the ALJ's findings were based on substantial evidence and a proper application of the law. <u>See</u> <u>Winschel</u>, 631 F.3d at 1179. The ALJ has failed "to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed." <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). Therefore, the undersigned concludes that remand is appropriate.

Plaintiff's final argument is that the ALJ failed to provide Plaintiff with a full and fair hearing. [Doc. 11 at 18-23]. Plaintiff contends that the ALJ did not solicit sufficient testimony from Plaintiff about her impairments, failed to develop the record with treatment and education records, and refused to allow Plaintiff's wife to testify

22

at the hearing. [Id.]. Although Plaintiff's arguments do not appear to be meritless, the court finds it unnecessary to address the issue regarding the administrative hearing because remand is warranted based on the significant issue discussed *supra*. See Demenech v. Secretary of the Dep't of Health and Human Services, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that most of plaintiff's arguments did not need to be addressed because remand was warranted on a significant issue); Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (finding that it was unnecessary to address most of the issues raised by the plaintiff because they were likely to be reconsidered on remand); Shaffer v. Comm'r of Social Security, 2015 WL 5604768, at *2 (M.D. Fla. September 23, 2015) ("Because remand is required on the first issue in this case, it is unnecessary to review Plaintiff's second argument."); Walker v. Astrue, 2013 WL 5354213, at *19 n.22 (N.D. Ga. September 24, 2013) ("Because it is recommended that this case be remanded for further proceedings that could impact the ALJ's assessment of claimant and Shaw's credibility, her RFC, and her ability to perform other work in the national economy, the Court need not address the remaining issues raised by the claimant."); Hall v. Astrue, 2012 WL 2499177, at *4 n.8 (N.D. Ala. June 22, 2012) ("Because remand is warranted on these grounds, the court need not consider claimant's other arguments."). Upon remand, the

Administration must develop a full and fair record and must consider all of the evidence that has been submitted during the administrative process. See Cowart, 662 F.2d at 735 ("Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."); 20 C.F.R. § 404.900(b) (stating that with certain limitations, the Social Security Administration "will consider at each step of the review process any information you present as well as all the information in our records").

## VI.    Conclusion

Based on the forgoing reasons and cited authority, the court finds that the decision of the ALJ was not supported by substantial evidence and was the result of a failure to apply the proper legal standards. It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the above discussion. Upon remand, the ALJ should state the weight given to each medical opinion, offer her reasons for making these determinations, and, if she does not include in the RFC assessment limitations found by medical sources, she should explain why. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

AO 72A

(Rev.8/82)

**IT IS FURTHER ORDERED** that, in the event past due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees. Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant. Plaintiff shall file any reply within ten days of service of Defendant's response.[2]

**SO ORDERED**, this 15th day of August, 2019.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

---

[2]On December 26, 2018, an administrative order was issued staying this case in light of lapse of appropriations. [Doc. 16]. The stay was lifted as of January 25, 2019.

25